IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2018

**STATE OF TENNESSEE v. ROBERT DERRICK JOHNSON**

**Appeal from the Circuit Court for Bedford County**
No. 17752    Franklin Lee Russell, Judge

_____

**No. M2015-02516-CCA-R3-CD**

_____

The Appellant, Robert Derrick Johnson, was found guilty of robbery, and the trial court sentenced the Appellant as a Range II multiple offender to ten years in the Tennessee Department of Correction.  On appeal, the Appellant contends that he was denied his constitutional right to a speedy trial and that the trial court erred by declaring a mistrial in his first trial; therefore, his conviction following a second trial violates the principles of double jeopardy.  Upon review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Elizabeth A. Russell, Franklin, Tennessee (on appeal), M. Wesley Hall, IV, Unionville, Tennessee (at trial), for the Appellant, Robert Derrick Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; Robert James Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Procedural Background**

On March 22, 2013, the Appellant was arrested for the robbery of Kasey Vincent.  A Bedford County grand jury returned an indictment charging the Appellant with robbery on November 18, 2013, the Appellant was arraigned, and an assistant public defender was appointed to represent him.  After several hearings were continued, either with

defense counsel's express acquiescence or because of weather issues, the Appellant's trial was set for April 13 and 14, 2015.

Around midday on the first day of trial, one of the State's witnesses, Detective Sam Jacobs, became "acutely" ill and had to be taken to the hospital. Detective Jacobs was unable to recover in time to testify at trial, and the State moved for a mistrial. The Appellant opposed the motion, but the trial court granted the mistrial without prejudice. The court found that a mistrial was necessary in order for both parties to receive a fair trial and that Detective Jacobs' absence from trial was neither the detective's fault nor the fault of the State.

Before the second trial began, the assistant public defender representing the Appellant filed a motion to withdraw, explaining that he had a conflict of interest because he recently had learned the public defender's office had represented a potential witness in the Appellant's case. The assistant public defender was allowed to withdraw, and trial counsel was appointed. The second trial was held on May 11 and 12, 2015, and the jury found the Appellant guilty of robbery. At the Appellant's August 21, 2015 sentencing hearing, the trial court sentenced the Appellant as a Range II multiple offender to ten years in the Tennessee Department of Correction.

On August 31, 2015, trial counsel filed a timely motion for new trial, challenging the sufficiency of the evidence sustaining the Appellant's conviction and the sentence imposed by the trial court. On September 3, 2015, the trial court entered an order denying the Appellant's motion for new trial. In the same order, the trial court noted that the Appellant was indigent and had expressed an intention to pursue a direct appeal; however, due to the Appellant's "questions about the competence of" trial counsel and his desire for trial counsel to withdraw, the trial court appointed different counsel to represent the Appellant on direct appeal.

Thereafter, the Appellant, acting pro se, filed in the trial court a Motion to Obtain Records, asking that a copy of "a complete and accurate record of all proceedings" in his case be prepared for him at the State's expense. The certificate of service reflects that the motion was mailed on September 25, 2015, and that the motion was stamped filed on October 22, 2015. On November 20, 2015, the trial court issued an order reflecting that as of the stamped filed date of the Appellant's pro se motion, his recently appointed counsel had not filed a notice of appeal and that the Appellant was "concerned that his direct appeal options may be lost." The trial court stated that due to counsel's failure to file a notice of appeal, the trial court "retain[ed] the jurisdiction to amend" its previous orders. The trial court, therefore, vacated the September 3, 2015 order denying the Appellant's motion for new trial and ordered that "the new Order [o]verruling Motion for New Trial filed simultaneously with this Order is substituted in its place in order to give [counsel] additional time to file her notice of appeal and to perfect her appeal . . . ." The

order further provided that the relevant proceedings were to be transcribed and copies of the transcripts provided to counsel and the Appellant.

On December 18, 2015, counsel filed a notice of appeal. Despite requesting and receiving several extensions of time, counsel failed to file a brief in this court. This court initiated contempt proceedings, which were held in abeyance while counsel petitioned to have her law license placed on inactive disability status. This court relieved counsel of further representation and appointed current appellate counsel.

On appeal, the Appellant raises two issues. First, he contends that he was denied his constitutional right to a speedy trial. Second, he contends that the trial court improperly declared a mistrial because it was not "manifestly necessary"; therefore, a retrial was barred, and his conviction violated the principles of double jeopardy. The State responds that the trial court did not have jurisdiction to vacate the September 3, 2015 order denying the Appellant's motion for new trial and to substitute it with the order filed on November 20, 2015. Accordingly, the Appellant's notice of appeal was untimely. The State further contends that the Appellant did not raise either of his appellate issues in the trial court and did not request plain error review by this court; therefore, his issues are waived.

Before we may address the merits of the Appellant's issues, we are compelled to clarify the procedural posture in which the case currently stands. To do so, we must first address whether the trial court had jurisdiction to vacate its initial order denying the Appellant's motion for new trial and to enter a new order.

Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, in the event a timely motion for new trial is filed, the thirty days in which to file a notice of appeal begins to run "from [the] entry of the order denying a new trial . . . ." Tenn. R. App. P. 4(c); see State v. Brown, 479 S.W.3d 200, 205-06 (Tenn. 2015). As we stated earlier, the Appellant timely filed a motion for new trial, and the trial court entered its initial order denying the motion on September 3, 2015. "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c); State v. Moore, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). After the trial court denied the Appellant's motion for new trial, the Appellant did not file a timely notice of appeal or one of the other post-trial motions listed in Rule 4(c) of the Tennessee Rules of Appellate Procedure; accordingly, the judgment became final thirty days after the motion for new trial was denied. See State v. Hatcher, 310 S.W.3d 788, 801 n.5 (Tenn. 2010).

Generally, once a judgment is final, the trial court loses jurisdiction over the matter. State v. Boyd, 51 S.W.3d 206, 210 (Tenn. Crim. App. 2000). Therefore, because the judgment was final, "the trial court lacked jurisdiction to vacate and re-enter the order [denying] the motion for new trial, even 'in the interests of justice . . . .'" State v. Mikel U. Primm, No. M1999-00354-CCA-R3-CD, 2000 WL 711145, at *1 (Tenn. Crim. App. at Nashville, June 2, 2000). Accordingly, the November 20, 2015 order purporting to vacate and re-enter the order denying the motion for new trial was "of no legal effect." State v. Julio Ramirez, No. M2009-01617-CCA-R3-CD, 2011 WL 2348464, at *8 (Tenn. Crim. App. at Nashville, June 8, 2011).

The Appellant's notice of appeal was filed on December 18, 2015, which was more than thirty days after the filing of the trial court's September 3, 2015 order denying the motion for new trial, making it untimely. Regardless, "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. Crim. P. 4(a). The record is clear that the Appellant was not at fault for his attorney's failure to act; therefore, we have chosen to waive the timely filing of the notice of appeal.

As we stated earlier, the Appellant has raised two specific issues[1] on appeal: (1) that he was denied his constitutional right to a speedy trial and (2) that the trial court erred by granting a mistrial and that his conviction following a second trial violates the principles of double jeopardy. The State argues that the Appellant failed to make any arguments regarding either issue in the trial court, either contemporaneously with the events or in the motion for new trial; therefore, the issues are waived.

A. Mistrial

Regarding the Appellant's claim that the trial court's error in granting a mistrial prohibited a retrial, we agree with the State that the issue is waived. See Tenn. R. App. P. 3(e). Moreover, the Appellant has not requested plain error review on this issue, and, "consequently, has failed to provide any analysis of the five factors required for plain error review." State v. Jaselyn Grant, No. W2017-00936-CCA-R3-CD, 2018 WL 1876339, at *4 (Tenn. Crim. App. at Jackson, Apr. 18, 2018); see Tenn. R. App. P. 36(b); State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000); State v. Adkisson, 899 S.W.2d 626,

---

[1] At the end of the Appellant's brief, he argues in a single short paragraph "[a]s an aside" that his "first trial contained a questionable basis for the State's exclusion of jurors during voir dire." We note that the Appellant failed to list this issue in his statement of the issues presented for review as required by Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure. Moreover, the Appellant failed to provide any citation(s) to the record where he objected to how voir dire was conducted and failed to provide any citations to authority to support his comments that the State's voir dire was "questionable"; therefore, even if this court were to construe the Appellant's contention as an appellate issue, it would be waived. Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).

- 4 -

641-42 (Tenn. Crim. App. 1994). Our supreme court has cautioned that it is incumbent upon an appellant "to persuade an appellate court that plain error occurred that was sufficient to change the outcome of the trial." State v. Walls, 537 S.W.3d 892, 901 (Tenn. 2017). Regardless, from our review of the record we conclude that plain error review is not warranted.

## B. Speedy Trial

Regarding the Appellant's claim that he was denied his right to a speedy trial, we note that "[t]he right to a speedy trial arises under the Sixth Amendment to the Constitution of the United States made applicable to the State by the Fourteenth Amendment . . . and Article 1, § 9 of the Constitution of Tennessee . . . ." State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973). This court has held that "'the failure to demand a speedy trial is not a waiver of the right, but is one of the factors to be considered in the ultimate decision.'" State v. David Scott Hall, No. M2015-02402-CCA-R3-CD, 2017 WL 1655616, at *12 (Tenn. Crim. App. at Nashville, May 2, 2017) (quoting Bishop, 493 S.W.2d at 85), perm. to appeal granted, (Tenn. Aug. 16, 2017). To determine whether a defendant's constitutional right to a speedy trial has been violated this court must conduct the balancing test set forth in Barker v. Wingo, 407 U.S. 514 (1972). See State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981). Under the Barker analysis, the following four factors must be considered: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of the right to a speedy trial; and (4) the prejudice resulting from the delay. 407 U.S. at 530.

"The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial." State v. Vickers, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997). In this case, the Appellant was arrested on March 22, 2013, and his first trial was held on April 13-14, 2015, resulting in a delay of just over two years. A delay of one year or longer will usually trigger an inquiry into a speedy trial violation. Id. However, we note that in Vickers, this court found a delay of three years and nine months was not a presumptive speedy trial violation. Id. Therefore, we must examine the other factors involved.

The second factor, the reason for delay, generally falls into one of four categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. Wood, 924 S.W.2d at 346-47. The record reveals that the Appellant was arraigned and counsel was appointed on November 18, 2013. On January 17, 2014, the trial court granted the Appellant's motion to continue the case until the State could obtain results from the DNA testing being performed by the TBI crime lab. On March 6, 2014, the trial court issued an order continuing the case because the Tennessee Department of

Correction had cancelled transportation services due to icy road conditions. On April 11, 2014, the parties jointly moved for a continuance for a reason the record does not reflect, and the trial court granted the motion. On May 16, 2014, the parties jointly moved for a continuance because the State still had not received the results of the DNA testing, and the trial court granted the motion. On June 20, 2014, the Appellant made an oral motion to dismiss the case because the TBI crime lab had not yet generated a report on the DNA testing. The trial court denied the Appellant's oral motion to dismiss but granted the parties joint motion to continue the case to await DNA results. On October 2, 2014, the parties jointly moved for a continuance because the Appellant had not been transported to the court. On March 3, 2015, the trial court sua sponte cancelled court and continued the case due to safety concerns from a prospective winter storm. Therefore, the record is clear that all of the continuances were either necessary or were acquiesced to or caused by the Appellant.

Regarding the third factor, the Appellant's assertion of his right to a speedy trial, the Appellant claims that his oral request on June 20, 2014, to dismiss the indictment was an assertion of his right to a speedy trial. At the June 20 hearing, the Appellant did not argue that his right to a speedy trial had been violated. Rather, he maintained only that he was "getting [tired] of being brought back and forth" to court. He requested that the court "dismiss this case without prejudice . . . based on the fact that the TBI evidentially [sic] can't seem to get their test done." The trial court advised the Appellant that if the case were dismissed without prejudice, the State would re-indict the Appellant. However, the trial court agreed that if the results of the DNA testing came in before the scheduled court date, the court would "move it up."

This court has explained that "the State is not precluded from seeking a subsequent indictment following a dismissal without prejudice." State v. Casey Austin, No. W2004-01448-CCA-R3-CD, 2005 WL 659018, at *2 (Tenn. Crim. App. at Jackson, Mar. 22, 2005). As noted by the State, the remedy for a speedy trial violation is a dismissal of the charges and a bar on re-indictment. State v. Simmons, 54 S.W.3d 755, 759 (Tenn. 2001); State v. Charles Beaty, No. W2015-00223-CCA-R3-CD, 2016 WL 4400399, at *4 (Tenn. Crim. App. at Jackson, Aug. 16, 2016). Accordingly, the relief the Appellant requested cannot be construed as an assertion of his right to a speedy trial. "Failure to assert the right implies a defendant does not actively seek a swift trial." Wood, 924 S.W.2d at 347. Thus, this factor weighs against the Appellant.

Finally, we must determine whether the Appellant was prejudiced by the delay, which is the "final and most important factor in the [speedy trial] analysis." Simmons, 54 S.W.3d at 760. Prejudice is to be assessed in light of the following interests of the accused which the right to a speedy trial was designed to protect: (1) to prevent undue and oppressive incarceration prior to trial; (2) to minimize the anxiety and concern that results from being accused of a crime; and (3) to limit the risk that the defense will be

impaired.  <u>Id.</u>  Our supreme court has stated that "the most important issue concerning prejudice to the defendant is the impairment of the ability to prepare a defense."  <u>State v. Berry</u>, 141 S.W.3d 549, 568 (Tenn. 2004) (citing <u>State v. Baker</u>, 614 S.W.2d 352, 356 (Tenn. 1981)).  The Appellant acknowledges that the delay caused no "extraordinary" impairment to his defense.  Additionally, anxiety and concern are "always present to some extent, and thus absent some unusual showing [are] not likely to be determinative in [a] defendant's favor."  5 Wayne Lafave, <u>Criminal Procedure</u>, § 18.2(e) (4th ed. 2017) (footnotes omitted).

However, the Appellant contends that his pretrial incarceration was excessively oppressive and that he "experienced anxiety and concern as he was tasked with not only asserting his own rights but was transported great distances over the course of two and a half years."  As we explained earlier, the delays in trial were the result of continuances which were agreed to by both the Appellant and the State or were caused by unavoidable circumstances including weather and illness.  The Appellant's pretrial incarceration does not outweigh the other factors.  In balancing the factors, we conclude that the Appellant's right to a speedy trial was not violated.  Accordingly, the Appellant is not entitled to relief on this issue.

## II.  Conclusion

The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE