# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 15, 2012

## STATE OF TENNESSEE v. PATRICK LYNN CRIPPEN

**Direct Appeal from the Criminal Court for Knox County**
**No. 91305      Bob R. McGee, Judge**

_____

**No. E2011-01242-CCA-R3-CD - Filed November 6, 2012**

_____

Defendant, Patrick Lynn Crippen, was indicted by the Knox County Grand Jury for driving under the influence (DUI), violating the implied consent law, failing to provide proper evidence of financial responsibility, and violation of state registration law. Defendant waived his right to the appointment of counsel and subsequently filed motions to dismiss for want of prosecution and to suppress evidence of his performance on field sobriety tests, which were both denied by the trial court. Following a jury trial, at which Defendant represented himself, Defendant was convicted of DUI and found in violation of the implied consent law. The remaining charges were dismissed prior to trial. Defendant was sentenced by the trial court to 11 months and 29 days to be served at 75 percent. Defendant appeals his conviction *pro se* and asserts that: 1) he was deprived of his constitutional right to a speedy trial; 2) the trial court erred by allowing the officer to testify about Defendant's field sobriety tests; 3) the trial court improperly excluded evidence that the Knoxville Police Department unlawfully "stacked" charges against him; 4) that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963); 5) that the jury should have been instructed as to the availability of audio/visual equipment in the jury room; and 6) that Defendant was not properly informed of a hearing on his motion for new trial. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Patrick Lynn Crippen, Clinton, Mississippi, *Pro Se.*

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General, Jamie Carter, Assistant District

Attorney General; and Sarah Winningham Keith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts**

Ronald Gande testified that in the early morning hours of November 15, 2008, he was working as a tow truck operator. He responded to an "out of gas" service call at a Food City store on Western Avenue in Knoxville. When he arrived, he saw Defendant sitting in the driver's seat of his car, which was parked near the gas pumps. Mr. Gande testified that Defendant's car was "wiped out" and appeared to have been in a wreck. Defendant got out of his vehicle and Mr. Gande approached him. Mr. Gande testified that Defendant appeared "disoriented" and that he smelled something that he thought was alcohol. Defendant was also "stumbling around a little bit." Mr. Gande testified that he believed that Defendant had been drinking, and he called the Knoxville Police Department from his tow truck.

Officer Guy Smith, of the Knoxville Police Department, was on patrol on November 15, 2008, with Officer Brandon Shelley. They responded to a call at the Food City on Western Avenue. Officer Smith testified that when they arrived, Defendant appeared to be "completely disheveled." Officer Smith testified that Defendant "smelled strongly of alcohol," and his speech was "slightly mumbled to slightly slurred." Defendant's vehicle "was pretty badly beaten up." Defendant agreed to perform field sobriety tests. Defendant stated that he did not have any physical condition that would prevent him from performing the tests. Officer Smith testified that Defendant "clearly demonstrated" several clues indicative of impairment during the walk and turn test and the one-legged stand. Officer Smith placed Defendant under arrest. Officer Smith testified that Defendant initially agreed to a blood alcohol test, but later refused.

Officer Brandon Shelley of the Knoxville Police Department testified that he was with Officer Smith when they responded to a call about Defendant's vehicle. Officer Shelley observed Defendant perform the field sobriety tests and testified that Defendant performed poorly on the tests. Officer Shelley testified that Defendant refused to submit to a blood alcohol test after Officer Shelley advised Defendant of the implied consent form.

A video recording shows the officers pull into a gas station and park behind Defendant's vehicle, which was parked beside a gasoline pump. It was dark outside and raining. Defendant's vehicle had visible damage on the right rear side. Defendant was standing outside his vehicle, and he spoke to the officers after they approached him. He apparently described the accident and explained to the officers that the vehicle was out of

-2-

gas. Defendant agreed to perform field sobriety tests, and one of the officers demonstrated the walk and turn test to Defendant. Defendant appeared unsteady and off balance several times during the walk and turn test, and one of the officers commented that Defendant appeared to be taking a "leisurely stroll." The officer demonstrating the tests had to repeat several of the instructions to Defendant. Defendant stated that he did not "have a problem with balance." He stated that he was tired. Defendant was placed under arrest and handcuffed. Defendant indicated that he was willing to submit to a blood test, and one of the officers advised him that the results of such a test would be used against him as evidence in the prosecution of his case. Defendant was then placed in the backseat of the patrol car. There is some conversation between Defendant and one or both of the officers while Defendant is in the patrol car; however, our review of the video recording taken between the officers' arrival at the scene and the officers' arrival at the police station following Defendant's arrest does not show an implied consent form being read to or explained to Defendant.

**Analysis**

*Speedy Trial*

Defendant first asserts that he was denied his right to a speedy trial. The State responds that Defendant has waived this issue by failing to present an adequate record for review of the issue.

Once the State initiates criminal proceedings, the right to a speedy trial is implicated pursuant to the Sixth Amendment to the United States Constitution and to article 1, section 9 of the Tennessee Constitution. The right to a speedy trial in criminal prosecutions is also statutory in Tennessee. Tenn. Code Ann. § 40-14-101. In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972), the Supreme Court identified three interests which the right to a speedy trial was meant to protect: (1) the prevention of oppressive pre-trial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) limiting the possible impairment of the defense. *See also Doggett v. U.S.*, 505 U.S. 647, 654, 112 S. Ct. 2686, 2692, 120 L. Ed. 2d 520 (1992); *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692 (quoting *Barker*, 407 U.S., at 532, 92 S. Ct. at 2193).

Under *Barker*, the following factors are considered in determining whether an accused's right to a speedy trial was violated: (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant in light of the

facts and circumstances of the particular case. *Barker*, 407 U.S. at 530-32, 92 S. Ct. at 2192-93; *see also State v. Bishop*, 493 S.W.2d 81, 84-85 (Tenn. 1973) (implicitly adopting the *Barker* balancing test for our state's constitutional and statutory right to a speedy trial). All four factors are to be balanced in light of the facts and circumstances of the case. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. This court reviews a trial court's decision on an alleged speedy trial violation for an abuse of discretion. *State v . Hudgins*, 188 S.W.3d 663, 667 (Tenn. Crim. App. 2005).

Defendant was indicted for the offenses in this case on April 8, 2009, and his trial began on February 23, 2011. On December 14, 2009, Defendant filed a motion to dismiss for want of prosecution. Following a hearing on January 22, 2010, Defendant's motion was denied. The record before us contains a minute entry reflecting the same; however, the record does not include a transcript of the hearing or the trial court's written order, if any.

On appeal, Defendant was required to prepare a record that conveyed a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. Tenn. R. App. P. 24(b); *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Our supreme court has previously explained that an appellant must provide a sufficient record on appeal:

> When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal. Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue. Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue.

*Ballard*, 855 S.W.2d at 560 (citations omitted). "In the absence of an adequate record on appeal, this Court must presume that the trial court's rulings were supported by sufficient evidence." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

Because the record before us does not contain a transcript of the hearing on Defendant's motion to dismiss for want of prosecution, in which he asserted his right to a speedy trial, we are unable to consider at least two of the four *Barker* factors. The length of the delay is clear from the record, and because it is longer than one year, inquiry into the remaining factors is triggered. *Barker*, 407 U.S. at 530; *Hudgins*, 188 S.W.3d 667. As is also reflected in the record, Defendant first asserted his constitutional right to a speedy trial on December 14, 2009, when he filed his motion to dismiss the indictment for want of

prosecution. The assertion of the speedy trial right is "entitled to strong evidentiary weight" in the analysis, particularly since in some situations, prolonged delays may actually benefit the defendant. *Barker*, 407 U.S. at 521, 531-32.

Nevertheless, the absence in the record of a transcript of the hearing on Defendant's motion or a written order by the trial court prevents us from considering the reasons for the delay or the prejudice, if any, to defendant. Therefore, we are unable to determine whether the trial court abused its discretion in denying Defendant's motion, and we must presume the trial court acted within its discretion. Therefore, Defendant is not entitled to relief on this issue.

*Motion to Suppress*

Defendant next argues that the trial court erred by denying his motion to suppress the officers' testimony about the field sobriety tests given to him. Defendant asserts in his brief that the video recording of him performing field sobriety tests should have been suppressed because "it actually display[ed] only a stunned and injured elderly Defendant attempting to accommodate police's orders. . . ." Prior to trial, Defendant filed a motion to suppress any evidence regarding the field sobriety tests because the tests

> were fatally flawed because they should never have been administered to Defendant at that time and place, that [the Knoxville Police Department] knew of options to administering these fatally flawed [field sobriety tests], and that production at trial of these fatally flawed [field sobriety tests], or any reference thereof, would be unconstitutionally prejudicial to the Defendant's rights to a fair trial and to the administration of justice.

The trial court conducted a hearing on Defendant's motion and denied it, concluding that Defendant's challenge concerned the weight of the officers' testimony and not its admissibility.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Generally all relevant evidence is admissible except as provided by . . . [the] rules [of evidence]." Tenn. R. Evid. 402. The admissibility, relevancy, and competence of evidence are matters entrusted to the sound discretion of the trial court. With that principle in mind, we review the trial court's evidentiary rulings for an abuse of discretion. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Gray*, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997).

Tennessee courts have consistently affirmed convictions over a defendant's challenge to a conviction based, at least in part, on a trial court's admission of testimony about performance of field sobriety tests by a defendant accused of driving under the influence. (citing *State v. Donte Collins*, No. M2004-02564-CCA-R3-CD, 2005 WL 3369246, *5 (Tenn. Crim. App., at Nashville, Dec. 12, 2005), *perm. app. denied* (Tenn., May 1, 2006); *State v. Stacy R. Dowell*, No. E2002-01918-CCA-R3-CD, 2003 WL 402815, *5 (Tenn. Crim. App., at Knoxville, Feb. 24, 2003), *no Rule 11 app. filed*.

This court has previously held,

> [B]ecause a driver's objective manifestations of intoxication are always relevant in a driving under the influence prosecution, we agree with the long line of Tennessee cases holding field sobriety tests to be admissible. A driver's behavior and appearance can indicate the possibility, if not the exact level, of the driver's intoxication. The administration of a field sobriety test provides a sample of the driver's behavior for the officer and, ultimately, the trier of fact to consider when determining whether the driver was under the influence of alcohol and, if so, to what extent.
>
> . . . .
>
> In our view, the Defendant's argument was answered in *State v. Murphy* and its progeny. In those cases, the Tennessee Supreme Court and this Court held that the results of the field sobriety tests used in this case are indeed readily decipherable by an average juror, and, thus, require no additional testimony to establish the relevance of the results.

*State v. Michael L. Hodges*, No. M2008-00776-CCA-R3-CD, 2009 WL 2971073 at *4-5 (Tenn. Crim. App., at Nashville, Sept. 17, 2009), *perm. app. denied* (Tenn., March 22, 2010).

We conclude that the trial court did not err in denying Defendant's motion to suppress. Defendant is not entitled to relief on this issue.

*Evidence of "stacking" charges*

Defendant next argues that the trial court should have allowed him to present evidence that the Knoxville Police Department unlawfully "stacked" charges against him. In his brief, Defendant asserts that "KPD officers at the time of arrest of Defendant, having no actual, sustainable bases for charges against Defendant, did deliberately unconstitutionally fabricate

all their charges against him." In this same argument, Defendant also asserts that he should have been allowed to impeach the officers with their prior inconsistent statements.

During Defendant's cross-examination of Officer Smith, Defendant directed Officer Smith to "read the narrative" of the affidavit of complaint in the police report. The State objected on the basis that it was a hearsay statement. The trial court sustained the objection, ruling that "police reports cannot come into evidence." Defendant began reading from the affidavit, and the State again objected. The trial court stated that "the police report itself is inadmissible," but the trial court told Defendant that he could ask the officer, "Did you say this? Did you say that? Did you do this?" Defendant then asked Officer Smith whether he charged Defendant with any offenses other than DUI and implied consent. The State objected on the basis of relevance, and the trial court sustained the objection because the registration and insurance charges were dismissed prior to trial.

During Defendant's cross-examination of Officer Shelley, he attempted to read from the arrest warrant, and the State objected. The trial court stated,

| THE COURT: | You're using this kind of evidence as a prior statement made by the witness. You can use it to impeach his in court testimony if it's in conflict with his testimony. But it's not evidence that could be offered substantively to prove a point. |
| --- | --- |
| . . . . | |
| THE COURT: | It's not – you can use it as a prior inconsistent statement, it is admissible to impeach the testimony of the witness if it is in conflict with his in court testimony. But it is not substantive evidence of any – (inaudible) – that's the law. |
| [DEFENDANT]: | Can it be introduced into evidence? |
| THE COURT: | No. – (inaudible) – |
| [PROSECUTOR]: | And just so that we're all clear, we're not getting into the other two charges because they're not before the Court and they're not relevant. So if he wants to question him about – my objection – let me clarify. My objection partially to this document is you having |

him read stuff that is not before the Court. So stuff about the registration and stuff about the insurance is not relevant and I would ask that it be excluded on that basis.

THE COURT: – (inaudible) – but if there's a statement in the warrant about the DUI that you believe is inconsistent with the testimony he's offered in Court, you may ask him about that. But you're bound by his answers. You could simply bring it up.

The trial court then reiterated that Defendant could not "introduce the warrant itself as substantive evidence" and directed Defendant to "stay away from [questions about] registration and insurance."

Relying on Tennessee Rule of Evidence 803(8), the State asserts that the trial court properly excluded the affidavit of complaint because police reports are specifically excluded from the hearsay exception. We have previously held, "[i]f offered for the truth of the matter contained within them, police reports are hearsay and not admissible as a public record." *State v. Michael Brady*, No. M1999-02253-CCA-R3-CD, 2001 WL 30220, at *9 (Tenn. Crim. App., at Nashville, Jan. 12, 2001), *perm. app. denied* (Tenn., May 14, 2001); *see also State v. Sona Marie Cauldwell*, No. 03C01-9305-CR-00149, 1994 WL 111060, at *5 (Tenn. Crim. App., at Knoxville, March 25, 1994). Therefore, the trial court's conclusion that the affidavit and arrest warrant were inadmissible as substantive evidence is correct, and the trial court did not abuse its discretion in disallowing the evidence.

Regarding Defendant's contention that he was improperly denied the right to impeach the officers' testimony with the evidence, this issue is without merit. The record clearly shows that the trial court ruled that Defendant could cross-examine the officers about any inconsistent statements contained in the documents. Evidence contained in the reports that Defendant was also charged with violations of the financial responsibility and registration laws was not relevant under Tennessee Rules of Evidence 401 and 402 because those charges were dismissed prior to trial. There is also nothing in the record to support Defendant's allegation that the officers lacked any bases for the charges for which Defendant was tried or that the officers "fabricated" all charges against him. Defendant is not entitled to relief on this issue.

*Alleged Brady Violations*

Defendant next contends that the State failed to provide him with discoverable information prior to trial. Defendant submits that he properly requested discovery from the State pursuant to Tennessee Rule of Criminal Procedure 16. Included in the record on appeal is "Defendant's Request for Disclosure of Evidence," presumably served on the Assistant District Attorney General prior to trial. Nevertheless, Defendant has not identified on appeal any evidence, exculpatory or otherwise, that the State failed to disclose.

Defendant acknowledges in his brief that he obtained documents pertinent to his case from the Knoxville Police Department; in fact, as has already been addressed in this opinion, Defendant attempted to introduce as exhibits the affidavit of complaint and arrest warrant. Moreover, as the State points out in its brief, all three of the State's witnesses were identified on the indictment.

When a defendant claims on appeal that discoverable evidence was not disclosed prior to trial as required by Tennessee Rule of Criminal Procedure 16, "the burden rests on the defense to show the degree to which the impediments to discovery hindered trial preparation and defense at trial." *State v. Brown*, 836 S.W.2d 530, 548 (Tenn. 1992). Whether a defendant has been prejudiced by the State's failure to disclose information is a significant factor in determining an appropriate remedy. *State v. Smith*, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995).

Defendant has identified no discoverable information that he should have been provided by the State, and Defendant has not demonstrated how he was prejudiced by the State's alleged failure to respond to his discovery request. Defendant is not entitled to relief on this issue.

*Audio/video equipment in the jury room*

Defendant asserts that, "for the jury to evaluate Defendant's rightful line of defense, it was matter-of-fact essential that there be audio/visual instruments offered and available, or at least included in their charge for their routine review, either in the jury room, or for the jury to return to the courtroom to view/listen to the KPD video." Defendant argues that because his defense was based primarily upon the discrepancies in the officers' testimony and the video, the trial court's failure to instruct the jury as to the availability of audio/visual equipment deprived him of his right to a fair trial.

The State responds that Defendant has waived this issue by failing to make such a request at trial, and by failing to cite any authority in support of his argument on appeal. "A party may not raise an issue for the first time in the appellate court." *State v. Turner*, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995); *see also* Tenn. Ct. Crim. App. R. 10(b).

There is no indication in the record that Defendant requested from the trial court that the jury be instructed as to the availability of audio/visual equipment or that such equipment be provided in the jury room. Furthermore, as the State notes in its brief, the video recording of the incident was presented to the jury in open court. Therefore, there is nothing to suggest that Defendant was prejudiced by the trial court's failure to give such an instruction. Defendant is not entitled to relief on this issue.

*Motion for New Trial*

Finally, Defendant contends that the trial court erred by not properly informing him of the hearing on his motion for new trial. We are unable to review this issue because Defendant has failed to include in the record a transcript of the hearing on his motion for new trial or his sentencing hearing, at which Defendant states his motion for new trial was also addressed. In his brief, Defendant asserts that the motion for new trial hearing was "convoluted" and "void of accepted legal standards." However, there is nothing in the record to indicate the manner or time by which Defendant was notified of the hearing. Defendant is not entitled to relief on this issue.

## CONCLUSION

The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE